HEARD NOVEMBER TERM, 1875.

## TWITTY *vs.* HOUSER.

At the hearing of an appeal from the Probate Court, the Circuit Judge may remand the cause or any particular issue therein to the Probate Judge, with instructions to take further testimony and report the same to the Circuit Court.

An administrator *held* not to be liable for money deposited in bank and afterwards lost by its insolvency.

The sureties of an administrator are liable for the amount of a note held by the intestate at the time of his death against the administrator, and it makes no difference that the latter was insolvent when he administered and had continued so ever since.

Where a joint and several note appears upon its face to be under the seal of one only of the drawers, it may nevertheless be shown by parol that the other drawer had adopted the seal as his own and thus made it the sealed note of both.

A party is not excluded as a witness by Section 415 of the Code unless he has an interest which may be affected by the event of the action or proceeding.

A question as to the rights of parties under a will *held* to have been settled by Circuit decrees made between other parties many years before.

The estate of one who was entitled to a certain legacy with a limitation over if he died without issue, and who died without issue, *held* not to be liable for the legacy upon mere proof that the money was paid to his guardian and without proof that the guardian had accounted to him for it.

BEFORE REED, J., AT ORANGEBURG, JANUARY TERM, 1875.

This was an appeal from the decree of the Probate Judge of Orangeburg County in a case of D. S. Twitty and J. F. Eisenmann, petitioners, against Peter M. Houser, administrator of John A. Keitt, deceased, David Houser and E. H. Houser, defendants. It bore date February 9, 1874, and is as follows:

The petition was filed in behalf of the plaintiffs and other creditors of the late John A. Keitt, who shall come in and contribute to

the expense of the suit, praying that the defendant, Peter M. Houser, administrator of the goods and chattels of said John A. Keitt, be required to set forth a full, true and just account of his administration of the assets that have come to his hands, and that he may be ordered to pay and satisfy the petitioners' demands out of any balance that may be found in his hands on such accounting; and in case he fail to do so, that the other defendants, David Houser and E. H. Houser, the sureties on his administration bond, may be decreed to pay and satisfy the same. Due notice having been published, citing all the creditors of said John A. Keitt to appear before me, and to produce and establish their respective claims, the case came on to be heard upon the petition and answer, Messrs. Izlar & Dibble and DeTreville & Whaley, of counsel for the creditors, and Messrs. Glover & Glover, of counsel for the defendants. It was contended that the administrator was liable for the value of the provision crop and mules, etc., on a plantation which his intestate partially superintended the year of his death. The only evidence to establish such a claim was that contained in the record of a case brought by Peter M. Houser, administrator, against Jacob G. Keitt, to recover the value of said provision crop, mules, etc., in which said defendant pleaded the general issue and the Statute of Limitations, upon which a verdict was rendered for the defendant. This evidence does not, in my opinion, prove a *devastavit.* Besides, Jacob G. Keitt swears that John A. Keitt was simply overseer on the Whetstone place in 1867, which he (the witness) planted; that the place was his, and he was planting it, and that the said John A. Keitt was to get nothing but the net cotton.

The administrator, P. M. Houser, was indebted to his intestate by a promissory note for $440.33, dated November 11th, 1863. It appeared from the evidence that this note was given for the balance due on another note, given before 1861; and it also appeared that P. M. Houser was, when he administered, and now is, insolvent, and it was contended that the amount of this note should not be charged against the administrator as assets to be administered, or, if so charged, that the amount should be scaled, according to the Act of Assembly. I held otherwise, and charged the administrator with the amount of the note and interest.

Mr. Whaley produced, and proposed to establish as a specialty, a note against the estate of the intestate, of which the following is a copy:

$2,237.10.                       CHARLESTON, S. C., 29th June, 1867.

One day after date, I promise to pay to the order of E. H. Rodgers & Co., without offset, negotiable and payable at          , twenty-two hundred thirty-seven 13-100 dollars, value received, with interest from date at the rate of one and one-half per cent. per month.

Witness my hand and seal.
          (Signed)                    JOHN A. KEITT,
                                      JACOB G. KEITT. [SEAL.]

[Endorsed.]

| | | |
|---|---:|---:|
| Note............................................................... | $2,237 | 13 |
| Interest to 17th January, 1868................................ | 227 | 07 |
| | $2,464 | 20 |

CR.

| | | |
|---|---:|---:|
| By balance due on account rendered 17th January, 1868.. | $1,994 | 24 |
| | $ 469 | 96 |
| Interest to 1st October, 1868..................................... | 60 | 39 |
| Balance due on note, 1st October, 1868................. | $ 530 | 35 |

J. G. Keitt was offered as a witness to prove the consideration of the note, and that John A. Keitt had adopted the seal. It was objected by Messrs. Glover & Glover and Izlar & Dibble that J. G. Keitt is an incompetent witness, under Section 415 of the Code, and also on the ground that, the words "witness my hand and seal" having been endorsed at the foot of the note, parol evidence is inadmissible to vary, supplement or modify that expression or to change it to "our hands and seals." Overruling the objection, I hold that the witness is competent, and, being sworn, he says: "John A. Keitt and myself spoke of the note as a sealed note at the time we signed it; both spoke and wondered why Rodgers wanted it sealed at so short a date; we both signed it as a sealed note; the note was signed at my house by my son and myself; my

son John A. Keitt signed it first; the note was sent up for us to sign; he signed above and left room for me to sign below; it is in Frank Rodgers's hand; came by mail; it came in a letter to Jacob G. Keitt, and went back in a letter of mine, and after it was paid it came back in a letter to me; I am responsible as both principal and security; the note was given for supplies sent to the Whetstone place in 1867, which I planted, and on which John A. Keitt was simply overseer; the account was made in his name, but was made by me; the place was mine and I was planting it; he was to get all the benefit from the net cotton crop; all the cotton was applied to this note, and left the balance and interest, ($530.35,) which I paid; John A. Keitt was to get nothing but the net cotton; that was all he was to have, and the only contract we made; I was to furnish everything."

I therefore adjudge that said note is the joint and several single bill of John A. Keitt and Jacob G. Keitt, and that the balance due thereon should rank as a specialty against the estate of the intestate. A claim was presented by David Houser and Peter M. Houser, the surviving children of the late Andrew Houser, their father, arising out of the devise to them under the last will and testament, and codicil thereto, of said Andrew Houser. The testator left several children and two grand-children, Frances Victoria Keitt and John A. Keitt. David Houser and Peter M. Houser are the only surviving children. Frances Victoria and John A. both died unmarried and without leaving children, the former a minor, and the latter after attaining his majority and entering into the full enjoyment of the estate derived by him from the said Andrew Houser. The will of Andrew Houser provides "the balance of my property to be equally divided among all my heirs—that portion falling to all minors to be left in the hands of the executors or guardians until such time as such minors become of age," &c. The codicil provides: "I give and bequeath unto my grand-children, Frances Victoria Keitt and John Andrew Keitt, children of Jacob G. Keitt, the sum of $3,000, to be paid to them as they arrive at the age of twenty-one years or marry." The codicil also provides "that if any of my said children or my grand-children above named shall die without leaving children, then that such child's part shall be equally divided among my surviving children." It was held by both Chancellor Dunkin and Chancellor Caldwell, in the late Court of Equity, in construing the clause now under

consideration, that the surviving children of Andrew Houser "could not take until the death of both Frances Victoria Keitt and John A. Keitt, without leaving children," and that event having happened, it is now insisted that the surviving children, David and P. M. Houser, are entitled to the two-eighths of the residuary estate, which, in his own right, and as survivor of his sister Frances Victoria, went into the hands of John A. Keitt, the last surviving grand-child. In deference to the twice intimated opinion of the Court of Equity, and without any expression of my own views upon the subject, I have allowed this claim, amounting to $1,850.12, being the amount of the sums paid to Jocob G. Keitt, as guardian of John A. Keitt, and as administrator of Frances Victoria Keitt, by the executor of the will of Andrew Houser, and direct that it be ranked as a simple contract, and not as a specialty, in the payment of the debts of the said John A. Keitt.

A promissory note was presented, dated February 18, 1867, and payable one day after, for $152.95, drawn by John A. Keitt and J. G. Keitt, in favor of W. Brunson or bearer. The counsel for the administrator objected that said note was not rendered to the administrator until March 5, 1873, when the statute barred the claim. I sustained the objection and ruled out the claim. I find that the administrator, Peter M. Houser, holds for the estate of his intestate $3,743.67, which should be applied in payment, first, of the costs and expenses of these proceedings, and a counsel fee of                dollars to the attorneys of the administrator and to the attorneys respectively of the creditors, second, the judgment of Joseph Jackson against John A. Keitt; third, the specialty claims; and, fourth, the simple contracts, *pro rata*. It is further ordered and decreed that the defendants, Peter M. Houser, David Houser and E. H. Houser, do pay into this Court the sum of $3,743.67, to be by the Judge thereof administered according to this decree among the creditors.

From the foregoing decree the defendants appeal on the following grounds:

1. Because a note of P. M. Houser, for $440.33, dated the eleventh day of November, 1863, is charged against the administrator as assets to be administered, whereas defendants submit that

the proof was that P. M. Houser was, when he administered, and now is, insolvent, and that no portion of said note should be charged against him.

2. Because J. G. Keitt was admitted as a witness in behalf of E. H. Rodgers & Co., to testify in reference to certain transactions and communications between said witness and John A. Keitt, the intestate.    Whereas defendants submit that J. G. Keitt was an incompetent witness under Section 415 of the Code of Procedure.

3. Because a note drawn in favor of E. H. Rodgers & Co., for $2,237.13, with interest from June 29th, 1867, less $530.35, paid October 1st, 1868, was allowed as a specialty claim against the estate of John A. Keitt.    Whereas defendants submit that said note is not a specialty claim against the said estate, but that it is a simple contract, not under the seal of the intestate.    These defendants further submit that the said note, not being a specialty, is barred by the Statute of Limitations, and should not be allowed as a claim against the said estate, and that as to the said John A. Keitt, deceased, there was no consideration for the said note.

4. Because the sum of $2,618.38, the amount of a judgment in favor of P. M. Houser, administrator, against F. J. Pelzer and F. S. Rodgers, less counsel fees, is charged as assets in the hands of said administrator to be administered; whereas defendants submit that there was no evidence that the administrator ever received said amount or any part thereof.

5. Because after said decree was filed, and before fifteen days thereafter had expired, the Judge of Probate declined to allow the administrator to introduce testimony as to the deposit of $2,618.38, by his attorneys, in the Citizens' Savings Bank of South Carolina. Whereas defendants submit that the said testimony should have been admitted, and that the liability of the administrator should be limited to the amount which may be recovered from the assets of the said bank, now being administered in the Court of Bankruptcy.

6. Because the decree allowed a counsel fee to the attorneys, respectively, of the creditors; whereas the defendants submit that a counsel fee should be allowed only to the counsel of the creditors, D. I. Twitty and J. F. Eisenmann, who filed the petition.

The plaintiffs also appealed on the grounds:

1. Because the said judgment and decree is erroneous in stating

that the only evidence to charge Peter M. Houser, administrator, with laches in not recovering value of provisions, mules, etc., on plantation cultivated by his intestate during the year of his death is the record of the case of *P. M. Houser, administrator*, vs. *J. G. Keitt*, to recover the same.

2. Because it is erroneous in the decision that said P. M. Houser is not liable for laches in the instance mentioned in the preceding subdivision.

3. Because it is erroneous in allowing the claim of E. H. Rodgers & Co. against the estate of said intestate.

4. Because it is erroneous in holding said claim of E. H. Rodgers & Co. to be a sealed claim.

5. Because it is erroneous in the allowance of the claim of David Houser and Peter M. Houser against the estate of said intestate, and in the amount of said allowance.

6. Because the schedule attached to said decree is erroneous in allowing as claims against the estate of the said intestate the following:

"Sealed note of E. H. Rodgers & Co. for $2,237.13, with interest from 29th June, 1867, less $530.35, paid October 1, 1868."

"Claim of David and Peter M. Houser, under the will and codicil of Andrew Houser, $18,050.12."

On the 30th of May, 1874, the following order was granted by His Honor Judge Graham, without notice to the counsel of E. H. Rodgers & Co.:

On motion of Glover & Glover, defendants' attorneys, it is ordered that the defendants have leave to examine witnesses before the Probate Judge respecting the deposit of funds which were received by Glover & Glover in the case of *P. M. Houser, administrator*, against *F. J. Pelzer, F. S. Rodgers*, and deposited by them in the Citizens' Savings Bank, and that the evidence of said witnesses be incorporated with the evidence which accompanied the decree of the Probate Judge in the above case. It is further ordered that due notice of said examination be given to Messrs. Izlar & Dibble and DeTreville & Whaley.

Under the above order a number of witnesses were examined before the Probate Judge, and their testimony certified by him to be correct. The evidence tended to show that in January, 1868,

Peter M. Houser, as administrator of John A. Keitt, deceased, re-covered a judgment against F. J. Pelzer and F. S. Rodgers; that on February 1st, 1873, $3,000, the amount then due on the judg-ment, was paid to "the plaintiff's attorneys, the receipt therefor stating that they would not pay to the plaintiff any portion of said sum without giving due notice of the intention to do so;" that the plaintiff's attorneys deposited the money in the Orangeburg branch of the Citizens' Savings Bank, a body corporate, in their own names, taking a certificate of deposit bearing interest at seven per cent. per annum, and giving notice to the Cashier that the deposit was on account of the case of Twitty and Houser; that on the 25th Sep-tember, 1873, the certificate of deposit was renewed; that the bank failed in November, 1873, but up to that time it was in good credit, was considered solvent and safe by the whole community; that lawyers, County Treasurers, and business men generally, deposited in it, and that as late as the 23d October, 1873, a report, signed by a number of gentlemen, was published, in which they stated that after an examination of the affairs of the bank they were "enabled to assure its depositors and the public that we fully recognize its claims to their continued confidence."

The decree of His Honor the Circuit Judge is as follows:

REED, J. This case came up for a hearing before me at the January Term, 1875, at Orangeburg, S. C., upon the record certi-fied to this Court by the Probate Judge of Orangeburg County, and upon exceptions to the decree of the Probate Judge, dated 9th February, 1874, and grounds of appeal of plaintiffs, of defendants, and of E. H. Rodgers & Co., creditors of the intestate, John A. Keitt; also upon additional testimony taken before the Probate Judge, under an order made by my predecessor, at Chambers, May 30, 1874, (to the hearing of which additional testimony Mr. Wha-ley, representing E. H. Rodgers & Co., objected, and, upon my ad-mitting the same, duly excepted). After hearing the testimony, and the argument of the counsel for the parties respectively, I agree with the Probate Judge as to the matters embraced in the first, second, third and fourth grounds of appeal of the plaintiffs, and in the second and third grounds of appeal of the defendants, and the eighth ground of appeal of E. H. Rodgers & Co., creditors of in-testate, and the said grounds of appeal are overruled; but, without

reference to the evidence of Jacob G. Keitt, I am of opinion that the note of the intestate to E. H. Rodgers & Co. is the sealed note of the intestate and entitled to rank as a specialty debt in the administration of the assets of his estate.

I concur, also, with the Probate Judge concerning the claim of David Houser and Peter M. Houser, except as to the amount of the allowance. In the will of Andrew Houser, the father of David and Peter M. Houser, and the grandfather of the intestate, the following provision appears: "The balance of my property to be equally divided among all my heirs, that portion falling to all minors to be left in the hands of the executors or guardians until such time as such minors become of age." The codicil to the same will has the following: "I give and bequeath unto my grand-children, Frances Victoria Keitt and John Andrew Keitt, children of Jacob G. Keitt, the sum of $3,000, to be paid to them as they arrive at the age of twenty-one years or marry. And I further will and desire that if any of my said children, or my grand-children, above named, shall die without leaving children, then that such child's part shall be equally divided among my surviving children." It seems to have been already adjudicated that the limitation over to the surviving children could only take effect upon the death of *both* Frances V. and John A. Keitt without leaving children; and the only open question remaining is, whether the words of survivorship refer to the death of the testator, to the coming of age of the grand-children, or either of them, or to the deaths of the grand-children at any time.

The plaintiffs contend that the words of survivorship, so far as the intestate John A. Keitt's share is concerned, refer either to the death of the testator or to the coming of age of the said John A. Keitt. I am of opinion that the testator intended the surviving children to take the shares and legacy of the said grand children upon their deaths *at any time* without leaving children; but I do not think that the estate of John A. Keitt should be charged with any portion of the fund which the testator's executor paid to the administrator of Frances Victoria Keitt for her share of the testator's estate or for her one-half of the said legacy. In regard to the defendants' first ground of appeal, I think the administrator properly chargeable with the note for $440.33, dated November 11th, 1863, and the interest thereon; but inasmuch as the administrator, when he administered, was, and now is, insolvent, I hold that his co-

defendants, who are sureties on his administration bond, are not responsible for the amount of this note beyond the commissions which the administrator is entitled to receive from the estate of his intestate. Upon the testimony taken before the Probate Judge under the order of Judge Graham, dated May 30th, 1874, it ap- pearing that the sum of $2,618.38, the amount of a judgment in favor of P. M. Houser, administrator, against F. J. Pelzer and F. S. Rodgers, less counsel fees charged in the account as assets in the hands of the administrator to be administered, was deposited by the attorneys of said administrator in the Citizens' Savings Bank, where it remained at seven per cent. interest, until the said bank was adjudged a bankrupt, I hold that the defendants are responsible only for such dividends as shall be paid out of the assets of the said bank in the administration thereof in bankruptcy. I do not concur with the Probate Judge in the allowance of a counsel fee to the attorneys respectively of the creditors; the proper fee to be allowed in this behalf should be allowed only to the counsel of D. I. Twitty and J. F. Eisenmann, who filed the petition.

It is, therefore, ordered and adjudged that the decree of the Probate Judge be modified so as to conform herewith, and that the Clerk of this Court do so certify to the said Probate Court.

Exceptions to the decree were taken by the different parties to the proceeding, and appeals taken to this Court on grounds which sufficiently appear in the opinion of the Court.

*Izlar & Dibble,* for petitioners.

*T. B. Whaley,* for E. H. Rodgers & Co.

*Glover & Glover,* for administrator.

April 11, 1876.    The opinion of the Court was delivered by

Moses, C. J.    The Court, in determining the several exceptions to the judgment of the Circuit Judge, will first dispose of those which are included in the appeal on the part of the creditors, who have come in under the petition of the plaintiffs, with the purpose of establishing demands against the intestate, John A. Keitt.

In regard to so much of their appeal as resists the right of the administrator to protect himself in the loss of the proceeds of the judgment against E. H. Rodgers & Co., by the failure of the bank

in which they were deposited, we entertain no doubt. It does not appear that at the reference any notice was brought to the counsel of the administrator that the amount had been included in the account against him. He would have been at liberty, therefore, in the absence of such knowledge, to resist the charge on any sufficient ground, through an exception to the decree of the Probate Judge. The view which would confine the Circuit Court on an appeal from the Court of Probate to a mere determination of the points made by the notice would so embarrass its mode of procedure as seriously to affect the end proposed by its jurisdiction in matters of appeal from the orders, sentence or decree of a Probate Court.

The Circuit Court, by the sixty-second Section of the Code, is to "proceed to the trial and determination of the question according to the rules of law." If upon the hearing it should appear that either party to any particular issue involved in the judgment would be prejudiced without the hearing of further evidence, or that a surprise would operate to the injury of either, as the Court is without authority to hear the case anew by the examination of further testimony, the ends of justice would be defeated if it had no power to remit it for additional evidence on all the issues or any designated part. Why may not the Court remand the case for a new hearing? and if it can so order, why may it not limit the further inquiry to a single issue? The order of May 30, 1874, does not seem to be open to the objection made.

It is further contended that, assuming the right of the Judge to grant leave for the examination by the Probate Judge on the issue made by the defendants in regard to the fund referred to, there was error in his not holding the administrator liable for the loss of it by the failure of the bank in which it was deposited. In considering the point now under review, it must be remembered that, when collected, the proceeds of the judgment were necessarily to remain in the hands of the administrator until it was ascertained by the proceedings pending in the Probate Court at the time they were received how they were to be appropriated. In the view we take of the liability of the administrator for the loss of this sum, it may be considered as if paid directly into his hands by the defendants in the judgment, and by the administrator deposited in the Orangeburg branch of the Citizens' Savings Bank of South Carolina. To treat the judgment as an investment, and to charge the administrator with a breach of duty in collecting it, is complicating the already

very embarrassing subject of trusts with a new element for which no precedent or authority can be found. The conversion of a debt into a judgment is not for the purpose of investment, either as a temporary or permanent fund, for the accrual of interest. So far from this, it is the usual mode of enforcing the payment of the debt on which it is founded. The purpose is not to place the debt in the shape of a judgment, so as to remain as an investment, but that by so changing its form it may be forthwith collected, and thus be the means of obtaining money which may be appropriated to the uses of its owner, according to his own interest or caprice. The proper inquiry is, was the act of the administrator under the circumstances induced by that reasonable care with which prudent men, looking to their benefit, usually conduct their own business? The proceedings which were to determine the application of the money held by the administrators were still pending in Court. The deposit was made in a bank paying interest, and the only institution of the kind in the County where the letters of administration had been granted. At the time of the deposit it was in such good standing as to commend itself generally to the community, which is shown by the fact that the merchants, lawyers, officers of the Court and persons resident in and about the town, including several of the County Treasurers, made it the place for the deposit of their money. Even after the alarm of the public as to the condition of the bank, its officers submitted to its patrons extracts from a report, by gentlemen in various parts of the State, in the following language: "After an examination of the affairs of the Citizens' Savings Bank of South Carolina, made at the solicitation of the managers of the institution, we are enabled to answer its depositors and the public that we fully recognize its claims to their continued confidence." To make the administrator liable for the loss which followed from no fault on his part, would inflict upon him a punishment for not foreseeing what others having better opportunity failed to perceive in time to save them from a consequent loss. The views which we have taken of this part of the case are reflected from the principles announced in *Fitzsimons* vs. *Fitzsimons*, 1 S. C., 400.

So much of the judgment of the Circuit Court as holds that the sureties on the official bond of the administrator are not responsible for the amount of his note to the intestate is clearly erroneous. We have, during the present term, in the case of *Jacobs, administrator,* vs. *Woodside & Goldsmith,* decided the very point raised in this

exception,.and it is only necessary to refer to it as authority for the same conclusion which we reach here.

It is next in order to consider so much of the appeal on the part of some of the defendants and the two plaintiffs as charges error in the Circuit Court in holding and adjudging the joint and several note of the intestate and Jacob G. Keitt to E. H. Rodgers & Co. to be the sealed note of the intestate, and therefore to rank as a specialty debt in the administration of the assets of his estate.

If the evidence of Jacob G. Keitt is not obnoxious to Section 415 of the Code, it is conclusive proof of the adoption by the intestate of the seal affixed to the name of the said Jacob G. Keitt as his own. Several may adopt the seal of one without so expressing on the face of the papers.—*Bull* vs. *Domsterville*, 4 T. R., 343. It is the intention which gives effect to the act, and this may be proved by the manner of the signature, or parol evidence, connecting what may appear on the instrument with the declaration of the party, so as to make his intention manifest. The Section of the Code referred to does not exclude the testimony of Jacob G. Keitt, a several co-signer of the note, because he has "no legal or equitable interest which may be affected by the event of the.action or proceeding." For although it is against a party "defending the action as administrator," and the testimony is "in regard to a transaction or communication between the witness and a person at the time of the examination deceased," yet the fact that the proposed witness has no interest to be affected by the issue in the case withdraws him from the operation of the provision in the said Section, which, if he had such an interest, would include him. He not only admits in his testimony that he is the principal in the note, but he proves that the consideration for which it was given enured entirely to his own benefit, and that his co-maker was only a surety. The establishment of the note as a valid claim by specialty against the estate of the intestate in no way increases or diminishes the liability of the principal, who is a competent witness under the said Section of the Code, which only excludes a witness "having a legal or equitable interest which may be affected by the event of the action."

The question raised by the appeal of the plaintiffs as "to what point of time do the words of survivorship in the codicil to the will refer," we think has been fully adjudicated by the decrees set out in the brief. Two of them were made by Chancellor Dunkin, and the third was by Chancellor Caldwell. The parties inter-

ested were all before the Court, and appear to have acquiesced in its judgment by not taking an appeal. Nearly twenty years have elapsed since they were pronounced, and their effect is sought to be disturbed, not by any one having an interest in the estate of the testator, but by subsequent creditors of one of the grand-children, who took as devisees and legatees under both the will and the codicil. The decrees are conclusive, because on the same points, by a competent Court, and preclude any new inquiry as to their effect on the parties whose interests were determined by them.

We agree with the Circuit Judge that the estate of John A. Keitt is not responsible to the surviving children of Andrew Houser for moneys paid to Jacob G. Keitt as administrator of Frances V. Keitt. Her estate is not in process of settlement before the Court, nor is her administrator a party to the present proceeding. Before any such liability could rest upon the estate of John A. Keitt, it must be made to appear that the portion received by him through the estate of the said Frances G. did not vest absolutely in him, but belonged to the children of the said Andrew Houser, in right of their survivorship under his will.

We do not see how Peter M. Houser, who is the administrator of John Keitt, can claim as a creditor the interest which he, the said John A., was entitled under the will of Andrew Houser, upon mere proof of certain payments made to his guardian on such account, without any evidence of a settlement between the said guardian and his ward, or of some disposition of them to his use. So far as it is disclosed by the brief, there was no evidence of any payments to the said John A. Keitt on such account. David Houser, the other brother, claiming a like interest, could only assert it by a proceeding against the said Peter M. Houser, administrator of the said John A. Keitt. Yet here we find the administrator and his brothers entitled, as they say, as survivors, to the interest which John A. Keitt took in the estate of their father, claiming a right to be paid out of assets in the hands of the administrator on the mere ground that the said David Houser, the executor of the father, made payments on such account to the guardian of the said intestate. Before the other creditors of John A. Keitt should be compelled to submit to an abatement of their debts, by reason of this demand, his administrator must first seek an account from the said guardians of the moneys so received from the estate of Andrew Houser for and on behalf of his ward, the said John A. Keitt.

It is ordered that the case be remanded to the Probate Court for the County of Orangeburg for such orders and proceedings as may conform its judgment to the conclusions herein expressed.

*Wright*, A. J., and *Willard*, A. J., concurred.